**William R. NEESE, John T. Van Dyke, III and Deborah Trudeau, Plaintiffs/Appellants,**

**v.**

**The PARIS SPECIAL SCHOOL DISTRICT, Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 8, 1990.

Permission to Appeal Denied by Supreme Court July 23, 1990.

Charles L. Trotter, Jr. and Laurie Lea Doty, Huntingdon, for plaintiffs/appellants.

Richard L. Dunlap, III, Paris, for defendant/appellee.

HIGHERS, Judge.

Three citizens ("appellants") of Henry County brought this action contending that the Board of Education ("Board") of the Paris Special School District ("PSSD") violated Tennessee's Public Meetings Act. T.C.A. § 8–44–101 *et seq*. The Circuit Court at Henry County held that no such violation was evident from the facts.

At issue is the Board's enactment of an educational concept known as clustering. The PSSD is a "Governing body" as that term is defined at T.C.A. § 8–44–102 and it operates three schools consisting of kindergarten through grade 6. Under the concept of clustering, each of the three schools would be held responsible for educating only certain grade levels: Kindergarten through second grade at one school, third and fourth grades at another school, and fifth and sixth grades at the third school. The purpose of the clustering plan was to facilitate a correction of certain racial and socio-economic imbalances that existed in the three subject schools.

Clustering had been under consideration by the Board for several years. On February 17 and 18, 1989, four of the seven members of the Board as well as the superintendent of the PSSD, Dr. Larry Vick, met at Ken–Lake State Resort Park in Aurora, Kentucky. The five men present at this gathering discussed issues concerning the PSSD including the issue of clustering. Notice that the Board would meet on that date in Kentucky was published in Paris' local newspaper. We will later address the notice and the substance of the meeting in more detail.

On February 21, 1989, a Regular Meeting of the Board was held in Paris, Tennessee. Such meetings were held on the third Tuesday of every month. The Board engaged in a practice of notifying the public of its Regular Meetings by reporting the date, time and general agenda to three media representatives in Paris: The local newspaper and two radio stations. At this meeting the Board directed Dr. Vick to develop a formal plan for clustering and to present such plan at the following Regular Board Meeting.

The next Regular Meeting occurred on March 21, 1989. Notice of this meeting was effectuated in a manner similar to the notice for the February 21, 1989 meeting. During this meeting, Dr. Vick explained the plan he had developed to the Board and audience. After a discussion among those present, the Board formally approved the plan for implementation in the following school year.

On May 1, 1989, the present lawsuit was filed and on May 16, 1989, the Board readopted both the directive to Dr. Vick to develop a clustering plan and the plan as presented. It is quite apparent that these reconsiderations were undertaken on advice of legal counsel in the attempt to cure any wrong which may have tainted the original adoption of Dr. Vick's clustering plan.

Appellants assert that the "retreat" in Kentucky on February 17 and 18, 1989,

violated the proscriptions in T.C.A. § 8–44–101 *et seq.* and that the formal decisions made on March 21 and May 1 were simply "rubber stamps" of the decision previously made with regard to clustering. Counsel representing all parties in this matter have studiously researched the law in this and other jurisdictions and have forwarded such authority to this Court in skillfully drafted appellate briefs.

■ "[T]he formation of public policy and decisions is public business and shall not be conducted in secret." T.C.A. § 8–44–101. Our Public Meetings Act is remedial, *Dorrier v. Dark,* 537 S.W.2d 888 (Tenn.1976), and it should be liberally construed in furtherance of its purpose.

■ In order for the Court to determine whether the Board violated the Public Meetings Act we must first determine whether the Board actually conducted a "meeting" on February 17 and 18, 1989, as that term is defined in T.C.A. § 8–44–102.

> (c) 'Meeting' means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter.

The trial court did not believe the retreat of February 17 and 18, 1989, in Kentucky to be a meeting within the purview of this definition. Whether the PSSD even contested at trial that this gathering in Kentucky was a meeting as defined in the act is questionable. In Dr. Vick's deposition, which was introduced as an exhibit at trial, the following took place.

Q. [By Counsel for appellants] [T]he Board does, in fact, do business with a quorum, correct?

A. [By Dr. Vick] Yes.

Q. Okay. And, there was a quorum present at this particular meeting?

A. Yes.

\* \* \* \* \* \*

Q. All right. Do you have any factual basis Dr. Vick, in saying that the meeting in Kentucky, in February of '88 [sic] was not a meeting subject to the Open Meetings law?

A. No.

Q. Okay. As far as you know, was it?

A. Was it what?

Q. Subject to the Open Meetings law?

A. As far as I know now, it was.

Q. Okay. We don't really dispute that, do we?

[Counsel for PSSD]: No, we're not disputing that.

Additionally, we believe that under the facts of this case, the February 17 and 18, 1989, assemblage was a meeting pursuant to T.C.A. § 8–44–102. One of the Board members who was present at the meeting in Kentucky testified about the events which took place. When asked about the extent to which clustering was addressed, the witness testified:

A. [T]hen we addressed clustering for the most part of the following morning.

Q. The in depth discussing took place on Saturday morning?

A. Yes.

Q. [H]ow long did it last? How long did you all discuss it?

A. Several hours.

\* \* \* \* \* \*

Q. How did the program go? How did the discussion go? What happened, I guess is what I'm saying.

A. Basically, Dr. Vick gave us a briefing again on the findings, the investigation, that he and the staff had done on clustering, as far as addressing our problem, the imbalance, looking at all the possible ... advantages and disadvantages.

\* \* \* \* \* \*

We took a look at the disadvantages, because they had to be weighed and what impact they may have, or how serious an impact, and if they did, how to be softened or worked around.

\* \* \* \* \* \*

Q. You used the word weighed. Did you weigh the disadvantages and advantages of clustering?

A. Yes. I think we did. I'm speaking for myself. I can't speak for the other Board members, but in going down the

list and discussing the advantages and disadvantages, I know I weighed them. I'm sure the other Board members did.

Q. Yes, sir. You thought about them didn't you?

A. Yes.

Q. Okay. Did you discuss among yourselves?

A. Yes.

And later the witness stated:

A. I formed an opinion, as far as clustering, myself.

\* \* \* \* \* \*

Q. And, what was the opinion that you formed?

A. At that time, the opinion I formed [was] that clustering was a good program.

In his testimony, the witness refers to Dr. Vick's "findings." This is in reference to a multi-page handout prepared by Dr. Vick and delivered to each Board member.

According to the statute, a meeting exists if a public body convenes for one of two purposes: (1) in order to make a decision or (2) in order to deliberate toward a decision. T.C.A. § 8–44–102(c). Regardless of whether any Board member made a decision at the meeting, we do not believe that the Board can successfully avoid the fact that it deliberated toward making a decision. To deliberate is "to examine and consult in order to form an opinion.... [T]o weigh arguments for and against a proposed course of action." Black's Law Dictionary 384 (5th Ed.1979).

■ Having found that a meeting did take place on February 17 and 18, 1989, we proceed to address appellant's second issue which is whether proper notice of the meeting was given to the public. By statute, public bodies such as the PSSD must give adequate public notice of meetings. T.C.A. § 8–44–103. "[A]dequate public notice means adequate public notice under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public." *Memphis Pub. Co. v. City of Memphis,* 513 S.W.2d 511, 513 (Tenn.1974).

The record clearly reflects that clustering was the major issue addressed at the meeting in Kentucky. Significant preparation was required in order for Dr. Vick to deliver the presentation and to distribute the materials referred to above. The intent of Dr. Vick was to discuss the issue of clustering privately with Board members. When asked why clustering was not discussed openly at Board meetings, Dr. Vick responded, "The problem that led to clustering has racial overtones. It was not—I did not feel it was in the best interest to be exposing racial imbalances to the public."

The PSSD contends that adequate public notice was provided. It is alleged that an announcement of the meeting was given at the previously held Regular Meeting on January 17, 1989. Although the minutes of that meeting do not reflect such an announcement, a newspaper article giving a report of the meeting mentions the announcement. The article states:

In other business, the board:

—Agreed on a Feb. 17–18 date for a retreat at Ken–Lake State Park. Vick said two major items the board will look at during the retreat will be any word received from the attorney general on a proposed merger of the county and city school systems, and the recent drop in PSSD enrollment.

A local radio station also reported that the Board voted, at the January 17, 1989 meeting, to hold a retreat in Kentucky on February 17 and 18.

We are directed by the Supreme Court to examine the totality of the circumstances in order to determine whether notice was proper. The issue of clustering was of pervasive importance. Adopting Dr. Vick's clustering plan is arguably the most important action taken by the Board in many years. The record shows, by means of newspaper articles, that this was a very emotional issue for the citizens who have children in the PSSD. In its brief the PSSD states that Tennessee law does not require notice of a public meeting to include an agenda. We believe, however, that under these circumstances, the public had a right to be informed that the issue of

clustering would be extensively discussed at the Ken–Lake meeting. If the major issues discussed at the meeting were actually those stated in the newspaper article quoted above, perhaps there would be no interest in traveling to Kentucky for a two-day meeting. On the other hand, if the general public was aware that the major issue was not as reported in the newspaper, but rather was the issue of clustering, there would likely be more interest in attending. Certainly "adequate public notice under the circumstances" is not met by misleading notice. We do not suggest that any party intentionally misled the public with regard to notice, but we do believe that the notice was insufficient under the circumstances presented in the record before this Court.

 The PSSD contends and the trial court found that even if the notice for the February 17 and 18, 1989 meeting did not comport with the requirements of T.C.A. § 8–44–103 the meeting of March 21, 1989, when the clustering plan was formally adopted, was held within the confines of the Public Meetings Act. The trial court concluded:

> It is the opinion of the Court that the Paris Special School District Board legally enacted the concept of clustering at a regularly scheduled meeting upon proper notice on March 21, 1989, in full compliance with all requirements of the Tennessee Open Meeting Act. It is further the opinion of the Court that this was not done under a veil of secrecy but was done in an open and public manner after thorough discussion and public involvement and was done not only in conformity with the letter of the law but the spirit as well.

Appellants do not contend that notice was inadequate for the March 21, 1989 meeting. Their contention is that regardless of the notice given for that meeting, the decision had already been made at the meeting in Kentucky, and the vote on March 21, 1989 was nothing more than a ceremonial acceptance of the decision previously made.

T.C.A. § 8–44–105 provides that "[a]ny action taken at a meeting in violation of this part shall be void and of no effect...." We do not believe that the legislative intent of this statute was forever to bar a governing body from properly ratifying its decision made in a prior violative manner. However, neither was it the legislative intent to allow such a body to ratify a decision in a subsequent meeting by a perfunctory crystallization of its earlier action. We hold that the purpose of the act is satisfied if the ultimate decision is made in accordance with the Public Meetings Act, and if it is a new and substantial reconsideration of the issues involved, in which the public is afforded ample opportunity to know the facts and to be heard with reference to the matters at issue. See *Alaska Comm. Coll. Fed. of Teachers v. University of Alaska*, 677 P.2d 886, 891 (Alaska 1984).

The public was notified of the March 21, 1989 meeting in the same manner as for other Regular Meetings. The local newspaper notified the public that

> [t]he main item on the agenda is a review of a plan to cluster students in the same grade at one school. A large number of parents are expected to attend.

During the month between the February 21, 1989 meeting when Dr. Vick was directed to formulate a clustering plan and the March 21, 1989 meeting when the Board voted to adopt the plan, there was a great amount of public notoriety concerning this issue.

The minutes of the March 21, 1989 meeting provide:

> Dr. Vick explained to the Board and audience the Clustering Plan and recommended it be approved and implemented in the 1989–90 school year. After presentations from concerned parents and a question and answer session, Dr. Moore made the motion to approve clustering as presented; to be implemented next school year. Mr. Wichlan seconded the motion. Mr. Nichols made an amendment to the motion to delete 'next school year' from the original motion. This amendment failed for lack of a second. The motion carried.

The "question and answer session" referred to in the minutes lasted for approximately three hours.

Only two of the Board members' testimony was offered at trial. Both were in favor of clustering prior to the meeting, but the record reveals that they entered the meeting with open minds. If a valid point was raised in contravention to the clustering plan, these Board members were prepared to vote against the plan. Board member Nichols stated, in his testimony: "I knew I had one vote. I came in with an open mind."

It is clear from the record that new and substantial reconsideration by the Board transpired at the March 21, 1989 meeting in which a free and open exchange of ideas took place. In our opinion this meeting was held, in all respects, in accordance with T.C.A. § 8–44–101 *et seq.* Thus, in accordance with the principles which we have enumerated, the trial court properly upheld the Board's decision to adopt the clustering plan.

For the foregoing reasons the trial court is affirmed. Costs are adjudged against appellants.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.