IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 8, 2004 Session

## JAMES EDWARD DUNN v. KNOX COUNTY SHERIFF'S DEPARTMENT MERIT SYSTEM COUNCIL, ET AL.

Appeal from the Chancery Court for Knox County
Nos. 134856-2 & 134861-1     Daryl R. Fansler, Chancellor

---

No. E2004-00384-COA-R3-CV - FILED APRIL 28, 2005

---

Following a hearing, the Knox County Sheriff's Department Merit System Council ("the Council") voted to uphold Sheriff Tim Hutchison's termination of the plaintiff, James Edward Dunn. Dunn filed a petition for writ of certiorari in the trial court. He also filed a separate complaint in the same court alleging that the Council had violated the Open Meetings Act. Each side filed a motion for summary judgment on this latter issue. The trial court denied both motions. The trial court then held that the Council's decision to uphold Dunn's termination was supported by material evidence; but the court remanded the case to the Council, because the court held that the Council had failed to follow one of its procedural rules. Both parties have raised issues on appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Mary Ann Stackhouse, Deputy Knox County Law Director, Knoxville, Tennessee, for the appellant, Knox County Sheriff's Department Merit System Council.

Herbert S. Moncier and David S. Wigler, Knoxville, Tennessee, for the appellee, James Edward Dunn.

**OPINION**

I.

In September, 1994, Dunn was terminated from his position with the Knox County Sheriff's Department. One of the reasons given for the termination was "abuse of leave policies" related to the period of his jury service. Dunn appealed his termination to the Council, which, following a hearing, voted to uphold the termination. Upon petition for writ of certiorari, the Council's decision

was reviewed by Chancellor Frederick D. McDonald, now-retired, who remanded the case to the Council because he held that one of its members had a conflict of interest.

In 1997, the Council, with all new members, heard Dunn's case again and voted 2-to-1 to uphold his termination. Following this decision, Dunn filed another petition for writ of certiorari. In addition, Dunn, in a separate complaint, alleged that the Council violated the Open Meetings Act based upon a meeting that occurred on May 7, 1997. Dunn and the Council filed separate motions for summary judgment on this issue.

Chancellor Daryl R. Fansler, presiding over the trial court, denied the parties' respective motions for summary judgment with respect to the Open Meetings Act issue. While the trial court found that the Council's decision to uphold the termination was supported by material evidence, the court ruled that the Council had acted illegally in failing to comply with one of its procedural rules in rendering its final decision. In making this judgment, the trial court alluded to the Council's rule requiring "public deliberation." Because, in the court's judgment, the three members of the Council did not engage in "public deliberation," the court determined that the Council had violated its own rule and remanded the case to the Council for further proceedings.

Dunn filed a motion to alter or amend the court's judgment, which motion was denied. Both parties raise issues on appeal.

II.

A review of an administrative action is by way of the common law writ of certiorari. *See* Tenn. Code Ann. § 27-8-101 (2000); *see also **McCallen v. City of Memphis**,* 786 S.W.2d 633, 638-39 (Tenn. 1990). Under the writ, a court reviews the record of the administrative proceedings in order to determine whether there is any material evidence to support the administrative decision. *See **Cooper v. Williamson County Bd. of Educ.**,* 746 S.W.2d 176, 179 (Tenn. 1987) (quoting ***Davison v. Carr**,* 659 S.W.2d 361, 363 (Tenn. 1983)). The court can, however, consider new evidence to determine whether the administrative agency "exceeded its jurisdiction or acted illegally, capriciously, or arbitrarily." ***Id.***

A reviewing court does not inquire into the correctness of the administrative agency's findings of fact, ***Cooper**,* 746 S.W.2d at 179, nor is it permitted to weigh the evidence. ***Hoover v. Metro. Bd. of Zoning Appeals**,* 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996). A reviewing court "should refrain from substituting its judgment for the broad discretionary authority of the local governmental body." ***McCallen**,* 786 S.W.2d at 642.

III.

A.

The Council raises two issues on appeal. First, the Council asserts that the trial court erred in its interpretation of the words "public deliberation." It claims that its members did publicly deliberate and that the trial court erred in holding to the contrary and in remanding this case for further proceedings. Second, the Council argues that, in the event we find the Council did violate one of its rules by failing to engage in public discourse, the fact that Dunn and his attorney were present at the Council meeting and failed to object to the manner in which the Council rendered its decision constitutes a waiver of this issue.

B.

The Council's first issue challenges the trial court's interpretation of the pertinent language of Section 9.4 of the "Policies and Procedures Governing the Operation of the Merit System for The Knox County Sheriff's Department." The critical language is as follows:

> In accordance with the "Open Meeting [sic] Act" each Council member shall furnish a written independent decision to be used in public deliberation on the date the Council renders its final decision. The official record of the final decision shall be the minutes of the Council meeting to be written within 30 days of the decision. Separate opinions, including dissenting opinions, may be filed by Council members and kept part of the official record. The final Council decision must carry the approval of the majority of the Council members.

The trial court concluded that the Council violated Section 9.4 because, in the judgment of the court, the Council failed to honor and abide by the "public deliberation" language of that section. In addressing this matter, the trial court opined, in pertinent part, as follows:

> [Dunn] also complains that Council did not follow its own rules and therefore acted illegally when it failed to deliberate as called for in §9.4. In the May 7, 1997, workshop the Law Director advised Council as to the procedure for rendering a decision in the case. In essence, the Law Director advised them to independently prepare their own written opinion and then at the final session simply use those opinions without further deliberation to determine the vote of members of Council.

\* \* \*

-3-

The rules reference "the Open Meetings Act" and "public deliberation". To deliberate is "to examine and consult in order to form an opinion . . . to weigh arguments for and against a proposed course of action[.]" Neese v. Paris Special School District, 813 S.W.2d 432 (Tenn. [Ct.] App. 1990). Judging from the transcript of the proceedings and the actions of Council as reflected in the minutes of the June 10, 1997 meeting there was no public deliberation.

\* \* \*

Just as jurors in a jury trial are instructed to deliberate and consider the opinions of fellow jurors, so do the rules of the Merit System Council require its members to deliberate in a public forum prior to coming to a decision. It is clear from the Tennessee Pattern Instructions to jurors that they are encouraged to discuss the issues and even to change their mind if they later decide that they might be wrong. This Court cannot conclude that had deliberations been conducted as contemplated by the rules that the same result would have been reached.

Therefore, the Court finds that Council in effect acted in an illegal manner by not complying with its own rules and that this case therefore should be remanded to the Merit System Council for further proceedings.

(Underlining in original).

The trial court found no evidence that the Council members engaged in "public deliberation." In reaching this conclusion, the court placed particular emphasis on the following: (1) that the Law Director, at a "workshop" prior to the date of the Council's vote, "advised [the Council members] to independently prepare their own written opinion and then at the final session simply use those opinions without further deliberation to determine the vote of members of Council"; (2) that the written opinion of Council member William M. Arms stated that he had "reached his independent opinion *without discussion with other members*" (emphasis added); and (3) that the language of the minutes of the Council meeting of June 10, 1997, at which the members voted 2 to 1 to uphold Dunn's termination, reflects a lack of "deliberation." These minutes provide, in pertinent part, as follows:

Meeting was called to order by Mike Arms.

First to read his opinion was Mike Beatty who voted to overturn the Sheriff and give [Dunn] his job back.

-4-

> Second to read his opinion was John Ray who voted to uphold the Sheriff in his termination of [Dunn].
>
> Third to read his opinion was Mike Arms, Chairman, who also voted to uphold the Sheriff in his termination of [Dunn].
>
> The vote was 2 to 1 in favor of the Sheriff in his termination of [Dunn].
>
> Mike Arms, Chairman, made a motion to adjourn the meeting.

The Council finds something in the trial court's opinion that we do not find. The Council believes that the trial court found and held that the Council violated the pertinent language of Section 9.4 because its members failed to engage in *verbal conversation* before their vote. The trial court never expressly held this. It is true that the trial court did analogize to the deliberations of a jury; but the court never said that Section 9.4 *requires* verbal discussion among the members of the Council. As we read the trial court's opinion, its criticism of the Council's meeting of June 10, 1997, is simply this: the members were advised that all they had to do was read their opinions and then do nothing more; and this is precisely what the members did. In other words, the trial court held that the Council violated Section 9.4 in that the members purposely acted without affording each other an *opportunity* to question one another, to engage in "back and forth" discussion among themselves, and to enable a given member to test the findings of another member, that member's conclusions, and his logic in arriving at those conclusions. We agree with the trial court.

Section 9.4 does contemplate that each member of the Council, at the meeting when the Council "renders its final decision," will have in his or her possession a "written independent decision" and that he or she will "furnish" that decision at the meeting. While the rule does not specifically provide how the written decision is to be furnished, it seems clear to us that there are two possible ways by which this provision can be honored: by a member reading his or her opinion aloud or by reading it and also handing a copy of the opinion to the other members.

It is obvious to us from the record that the Council members thought that the "furnish[ing]" of the opinions was the end of the process. This was the advice they received from the Law Director and they acted in accordance with this advice. The minutes reflect that Mr. Beatty read his opinion and then voted to "give [Dunn] his job back." He was followed by Mr. Ray, who read his opinion and voted to uphold Dunn's termination. Finally, Mr. Arms, after reading his opinion, broke the tie and voted to uphold the action of the Sheriff in dismissing Dunn. There is nothing in the record reflecting that the members were given an *opportunity* to engage in a discussion in public regarding the issue at hand. There was no "public deliberation"; only a reading of the opinions, which, in each instance, was coupled with the member's vote.

-5-

As we read Section 9.4, the "furnish[ing]" of the members' opinions is not the end of the process; rather, it is the beginning. That rule clearly provides that the "furnish[ing]" of these opinions is "*to be used in public deliberation.*" (Emphasis added).

We hold that Section 9.4 contemplates three distinct phases of the decision-making process. First, there is the "furnish[ing]" of the written opinions at the public meeting in one of the two ways previously indicated. Second, once the three opinions have been "furnish[ed]," there will be a period in which each member is afforded an opportunity to ask questions or otherwise engage in public discussion regarding the issue before the body. Finally, once each member has been afforded an opportunity for public discussion, a vote will be taken. A member may vote as he or she had originally indicated or the member may change his or her opinion because of the public deliberation. If a member changes his or her mind, he or she may want to change his or her written opinion; or the member may just publicly say how he or she has changed his or her mind.

We do not hold that a member is *required* to verbalize. We simply hold that the members must be afforded an opportunity to do so between the furnishing of the opinions and the final vote.

The thrust of the Open Meetings Act, Tenn. Code Ann. § 8-44-101, *et seq.* (2002) is that "the formation of public policy . . . shall not be conducted in secret." Tenn. Code Ann. § 8-44-101(a). Section 9.4 goes beyond this edict and addresses *how* the public's business is to be conducted in public.

It is not for us to say whether Section 9.4 is a wise rule or not. We are not policy-makers. This rule was duly adopted. Our role is to interpret it. This we have done. We believe our interpretation is the only reasonable interpretation of the language adopted by the policy-makers, when that language is viewed in its entirety.

We hold that the Council did not follow Section 9.4 when it rendered its final decision. Accordingly, we agree with so much of the trial court's judgment as so holds. Furthermore, we agree with the trial court that a remand for further proceedings is appropriate.

C.

The Council next asserts that, in the event we affirm the trial court's holding that the Council acted illegally in failing to follow Section 9.4, Dunn has waived this issue by attending, with his attorney, the meeting at which the Council rendered its final decision and by failing to object at that time to the manner in which the decision was made.

Dunn was a party to the proceedings. He was not a member of the fact-finding body. It was not for him or his counsel to tell the administrative body how they should conduct themselves in order to comport with the requirements of Section 9.4. According to the record, the members read their opinions aloud and voted 2 to 1 to uphold Dunn's termination. The minutes are silent as to whether Dunn objected to the failure of the members to engage in "public deliberation." Under the

circumstances of this case, we cannot conclude that Dunn failed to do something which precludes him from raising this issue on appeal. *See* Tenn. R. App. P. 36(a). We conclude that the record before us does not clearly demonstrate that Dunn was such a party to the Council's error as to warrant a holding that this important issue cannot be raised by him on this appeal.

IV.

A.

Dunn raises six issues for our consideration:

> (1) Did the Council act illegally and arbitrarily in failing to find any material evidence that Dunn's protected political activity was not a motivating factor in the Sheriff's decision to terminate him?

> (2) Does the record contain sufficient material evidence to support the Council's decision to uphold the termination?

> (3) Did the Council act illegally when it failed to consider a lesser discipline than termination?

> (4) Did the Council violate the Open Meetings Act by deliberating without any notice to Dunn or his attorney?

> (5) Did both the Council and the Knox County Law Director have disqualifying conflicts of interest?

> (6) Is Dunn entitled to reinstatement under the Due Process clauses of both the state and federal constitutions?

B.

The first two issues raised by Dunn require that we review the evidence presented at the hearing. Our task is to determine whether there is material evidence to support the Council's decision and, if so, whether the Council otherwise acted illegally, capriciously, or arbitrarily.

Dunn received a notice that he had been selected to serve on jury duty in March, 1994. He went to Lt. Lyon in the Sheriff's personnel department to inquire as to what he should do about the summons, as Dunn worked the night shift. Lt. Lyon advised Dunn to take the night off from work on the evenings before he was scheduled to report for jury duty the next day, but that he was to continue to report to work on the nights when he was advised by the recorded message left by the clerk of court that his particular panel was not being called for jury duty the next day. Dunn claims

that he misunderstood Lt. Lyon's instructions. Since he was technically "on-call" during the entire period of his jury service, he thought that he did not have to report for work on any of the nights before he *might* possibly be called for jury service the next day. As a result, Dunn was paid for at least 7 days of work when he was actually absent from work and had not been advised that his panel was to report the next day. Even after Dunn realized the mistake he had made with respect to the policy, he did not report these unauthorized absences to his supervisor.

In examining the evidence before the Council, the trial court noted that the Council members could have found sufficient evidence to support a finding that the Sheriff's actions in terminating Dunn were politically motivated or that the Sheriff acted arbitrarily in firing Dunn. The court then opined as to what the Council actually held.

> Instead, Council rejected both [of] those arguments advanced by [Dunn] and found he was terminated from his employment for improperly claiming absences for jury duty when he, in fact, was not serving on a criminal court jury. The Court notes that Lt. Lyon's instructions were, in fact, in compliance with the requirements of [Tenn. Code Ann.] § 22-4-108. The General Assembly would not, under this statute, have considered [Dunn's] absence for the days in question to be absences lawfully excused for jury duty.

> Additionally, [Dunn's] own witnesses, in particular former Chief Rudy Bradley and U.S. Marshal Joe Fowler, expressed concerns about the manner in which [Dunn] claimed an excused absence for jury duty and later failed to report any mistake regarding the claiming of those days until he had become the subject of an investigation by the Sheriff's Internal Affairs officers.

> It is not for this Court to agree with Council's decision, nor is it for this Court to substitute its judgment for that of the Council. It is the duty of this Court to determine if there is sufficient evidence in the record to support Council's decision. If there is material evidence to support then this Court must affirm regardless of whether this Court would have reached the same conclusion.

> After reviewing the transcript of the proceedings and the exhibits this Court finds that material evidence exists to support the Council's decision.

After reviewing the record in this case, we agree with the trial court that there is material evidence to support the Council's decision to uphold Dunn's termination. As we have previously stated – and as the trial court held – we cannot substitute our judgment for that of the Council, *see McCallen*, 786 S.W.2d at 642, nor are we permitted to weigh the evidence. *See Hoover*, 924 S.W.2d

at 904. Furthermore, we find nothing in the record to support a holding by us, an appellate court, that the Council acted as it did, either in whole or in part, because of Dunn's political activities. We also find no support in the record for a holding that the Council otherwise acted in an illegal, capricious, or arbitrary manner. Dunn's first two issues are found adverse to him.

C.

Dunn next contends that the Council acted illegally when it failed to consider a lesser discipline than termination. Section 9.3 of the Council's rules sets forth the reasons the sheriff may dismiss an employee for cause; these reasons include "[u]nauthorized absences or abuse of leave privileges." Section 9.4 provides that if the Council finds the sheriff has not complied with the Council's procedures, that he has dismissed the employee for political reasons, or that the sheriff has acted arbitrarily, then "the Council *may* order the employee to be reinstated with back pay." (Emphasis added). Dunn asserts that the word "may" is permissive, and that, in the event the Council determines that an employee was properly terminated, the Council is permitted to consider a discipline short of termination. In support of this assertion, Dunn points to Section 9.3 of the Council's rules, which states that, if the Council finds the sheriff's termination of an employee was inappropriate, the employee "*shall* be reinstated without prejudice and with back pay." (Emphasis added). Dunn argues that, to the extent these two provisions are inconsistent, the court should resolve the inconsistency in favor of a finding that the Council has the authority to order a lesser discipline.

First, there is nothing in the record to indicate that Dunn ever asked the Council to consider a lesser disciplinary measure. The parties tried this matter as if it were an "all or nothing" question. Indeed, Dunn merely asked to be reinstated with back pay. Dunn cannot now be heard to complain that the Council failed to consider an alternative to termination when such a request was never made. *Cf. Tamco Supply v. Pollard*, 37 S.W.3d 905, 909 (Tenn. Ct. App. 2000) ("It is well settled in this state that a party on appeal will not be permitted to depart from the theory on which the case was tried in the lower court."). Second, Section 9.4 of the Council's rules does not *expressly* authorize the Council to take any action adverse to the employee other than termination. There is no mention of any lesser disciplinary measures. The only alternatives mentioned are dismissal and reinstatement. Third, we agree with the trial court that the use of the word "may" in Section 9.4 is imperative rather than permissive. *See Baker v. Seal*, 694 S.W.2d 948, 951 (Tenn. Ct. App. 1984).

For all of the above reasons, we find no error in the Council's failure to consider a lesser discipline.

Dunn suggests that the Council violated its enabling statutes by using the word "shall" in Section 9.3. Dunn asserts that "[t]he mandatory nature of this rule is not authorized." We find this claim to be wholly without merit.

D.

Next, Dunn argues that the Council violated the Open Meetings Act by discussing Dunn's case at a May 7, 1997, work session without providing any notice to Dunn or his attorney that the case would be discussed at that time.

The Open Meetings Act provides that it is "the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." Tenn. Code Ann. § 8-44-101(a) (2002). As the trial court found in the instant case, it is clear (1) that the Council discussed Dunn's case at their workshop on May 7, 1997; (2) that the discussion was not on the meeting agenda; and (3) that no notice regarding Dunn's case was given. However, the trial court went on to find as follows:

> The transcript of the May 7, 1997, workshop shows that with the exception of one passing comment the Council's conversation with the Law Director centered on procedural or evidentiary matters. It did not appear from the transcript that the merits of the case were discussed and taking all reasonable inferences from the facts presented by [Dunn] the Court cannot infer that a decision was reached at the workshop regarding the ultimate disposition of this case.

> In fact, the Court cannot infer that any decision was made. To the contrary, the unrefuted affidavit of Council members is that no decision was made.

Upon reviewing the record, we find that the evidence does not preponderate against the trial court's findings on this issue. Because the discussion of Dunn's case centered on evidentiary and procedural issues, and because the Council did not reach a decision on – or even discuss – the merits or ultimate disposition of the case, the Open Meetings Act is not implicated, and thus, there was no need to provide notice to Dunn or his attorney and there was no violation of the Act.

E.

Dunn next asserts that both the Council and the Law Director should have been disqualified from hearing Dunn's case, as both had disqualifying conflicts of interest.

With respect to the Council's alleged conflict of interest, Dunn contends that Rule 10 of the Rules of the Supreme Court dealing with the Code of Judicial Conduct is applicable to the Council members. This rule provides that the Code of Judicial Conduct has the following applicability:

> Anyone, whether or not a lawyer, who is an officer of a judicial system and who performs judicial functions, including an officer such

as a magistrate, court commissioner, judicial commissioner, special master, divorce referee, juvenile referee, or any other referee performing judicial functions, is a judge within the meaning of this Code.

Dunn is incorrect in his belief that the Code of Judicial Conduct applies to the Council members; the Council members are not "officers of a judicial system," as contemplated by this rule. Therefore, they are not subject to the Code and its confines.

Moreover, as found by the trial court, the real issue is "not one of conflict of interest, but one of fairness and impartiality." The trial court stated that Dunn "has cited no specific instance where it would appear that the advice of the Law Director resulted in anything less than a fair and impartial hearing" and that the Council "was very liberal in its admission of evidence." The trial court was able to find "no instance where Council prevented the introduction of material and non-cumulative evidence offered by [Dunn]." In short, all evidence points to the fact that Dunn received a fair and impartial hearing. Dunn's conflict of interest claim is found to be without merit.

F.

Finally, Dunn argues that, under the due process clauses of both the state and federal constitutions, he is entitled to be reinstated. In essence, Dunn asserts that remanding this matter to the Council for a third hearing would be futile, as he will never be afforded a fair hearing during the current Sheriff's term of office, and that this matter can only be fairly resolved and due process fairly obtained by ordering Dunn's reinstatement.

There is nothing in the record before us to substantiate Dunn's claim that he cannot receive a fair hearing before the Council – one that comports with due process. Furthermore, it is not our prerogative to order Dunn's reinstatement. That decision, if it is to be made, must be made by the Council. We are an appellate court. Our role is limited to reviewing the decisions of others. This we have done. We agree with the trial court's decision in its entirety.

V.

The judgment of the trial court remanding this matter to the Council is hereby affirmed. Costs on appeal are taxed to the appellant, the Knox County Sheriff's Department Merit System Council.

_____
CHARLES D. SUSANO, JR., JUDGE

-11-