IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 2, 2022 Session

**WAYNE GRAY ET AL. V. DICKSON COUNTY, TENNESSEE ET AL.**

**Appeal from the Chancery Court for Dickson County**
**No. 2021-CV-13      Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2021-00545-COA-R3-CV**

_____

AND

**WAYNE GRAY ET AL. V. DICKSON COUNTY, TENNESSEE ET AL.**

**Appeal from the Chancery Court for Dickson County**
**No. 2021-CV-56      Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2021-00546-COA-R3-CV**

_____

This consolidated appeal involves citizen challenges, via the common law writ of certiorari, to the procedure by which the Dickson County Planning Commission and Dickson County Commission approved a settlement agreement negotiated with Titan Partners, L.L.C. Specifically, the Petitioners allege that they were entitled to notice that the settlement agreement was going to be discussed at the regularly scheduled meetings of the Planning Commission and County Commission. They further allege that executive sessions were improperly utilized to discuss the settlement agreement in violation of the Open Meetings Act. The trial court found no violation of the Open Meetings Act and affirmed the actions of the Planning and County Commissions. Upon our review of the record, we agree that there was no violation of the Open Meetings Act and affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Rodger Dale Waynick, Jr., Dickson, Tennessee, for the appellants, Wayne Gray, Angela Lunn, John Reuter, Charles W. Spann, Turnbull Preservation Group, L.L.C., and Miranda Williams.

Timothy Valton Potter and Andrew Eldridge Mills, Dickson, Tennessee, for the appellees, Dickson County, Tennessee, Dickson County Planning and Zoning Office, and Dickson County Commission.

Thomas V. White and George Arthur Dean, Nashville, Tennessee, for the appellee, Titan Partners, L.L.C.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

This is the final opinion in a trilogy regarding claims brought by Dickson County citizens related to Titan Partners, L.L.C.'s ("Titan Partners") application for the construction and operation of a fuel terminal ("Project DV"). As was explained in detail in, *Turnbull Preservation Group L.L.C. v. Dickson County, Tennessee*, No. M2021-00542-COA-R3-CV (released simultaneously with this opinion), the Dickson County Planning Commission approved Titan Partners' site plan at an unpublicized Planning Commission meeting on April 23, 2020. On June 19, 2020, Dickson County citizens filed a petition for writ of certiorari requesting the chancery court declare the Planning Commission's actions at the April 23 meeting a violation of the Open Meetings Act and therefore void. Thereafter, at the July 23, 2020 Planning Commission meeting, the Planning Commission overturned its prior approval of Project DV. In *Turnbull*, we held that the Planning Commission's action in overturning its prior approval rendered the citizens' Open Meeting Act claims moot.

After the July 23, 2020 denial of the site plan, Titan Partners filed lawsuits against Dickson County. Thereafter, Dickson County Commissioners and counsel for Titan Partners engaged in non-public, "executive sessions"[1] regarding the litigation brought by Titan Partners. On January 14, 2021, the Planning Commission held its regularly scheduled public meeting which was livestreamed on Dickson County's YouTube channel; public notice was given for the meeting, including an agenda, but the published agenda did not include any mention of the settlement agreement or Project DV. At the beginning of the January 14 meeting, a motion was made, and properly seconded, to amend the agenda to include a discussion of a proposed settlement agreement with Titan Partners.

---

[1] The parties refer to the non-public meetings between the county commissioners and counsel for Titan Partners as "executive sessions" and/or "Rule 408 settlement discussions."

The settlement agreement itself does not appear in the record on appeal; however, a seven-page document entitled Summary of Settlement Terms (hereinafter "summary of settlement") was distributed at the January 14 meeting and is included in the appellate record. At the January 14 meeting, the county attorney discussed and summarized the terms of the settlement agreement paragraph by paragraph. The summary of settlement outlines twenty-one different obligations of Titan Partners under the settlement agreement. For example, section 1.6 states that within sixty days of Titan Partners commencing storage of petroleum at the fuel terminal, Titan Partners will "donate $1,000,000.00 . . . to the Community Foundation of Middle Tennessee . . . to be spent for a County Agricultural Center or any other community purpose." Section 1.9 requires Titan Partners to pay $50,000 annually for rural fire protection once the fuel terminal is utilized for the distribution of petroleum. Section 1.15 details the ground water and surface water monitoring procedures Titan Partners will implement. Section 3 outlines the County's obligations, and section 3.1 states:

> Upon the approval by the Planning Commission of these Settlement Terms, the Site Plan for the Terminal submitted for the July 23, 2020 Planning Commission meeting, being the same Site Plan approved at the April 23, 2020 meeting, will be deemed approved by the Planning Commission. Within five (5) days of the complete execution of the Settlement Agreement an Agreed Final Order will be filed resolving the Site Plan lawsuit[s].

After the county attorney finished his presentation, the floor was open for questions from the commissioners. One commissioner asked whether the settlement agreement was transferable, and it was explained that the settlement agreement would "run with the land" if Titan Partners sold the property to another operator. Two commissioners discussed their reasoning for voting for the settlement agreement, including the following statement from Commissioner Robert Comer:

> My last statements are about the settlement agreement itself and why I'm inclined to support it. One, for me it's – there'll be a lot of talk about the funding but for me it's about the protective measures. One of the issues that I had all through this project was that we were not conditioning this project in a way that guaranteed the protection of our community. I think the measures with the inclusion of the Water Authority's measures and Titan's agreement to all of them provides those protective measures that I was seeking all along, and I think does a great job in protecting this community.
> . . .
> Essentially, the settlement agreement got what most of us, and I think I speak for some of my colleagues, what most of us who were opposed to this project wanted in the first place. We never wanted to just say go away; we wanted to make sure that this project was done in the most safe way, the most responsible way and the most transparent way. . . .

The Planning Commission voted unanimously to approve the settlement agreement and recommended that the Dickson County Commission ("County Commission") also approve it.

Five days later, at the January 19, 2021 regularly scheduled County Commission meeting, a motion was made and seconded to add the settlement agreement to the agenda. Again, the county attorney discussed the terms of the settlement agreement and summarized the agreement paragraph by paragraph. Several commissioners asked questions[2] and engaged in debate regarding the settlement agreement. Ultimately, the County Commission approved the settlement agreement with nine commissioners voting for the settlement agreement, one commissioner voting against it, and one commissioner abstaining.

Several Dickson County residents ("Petitioners") filed petitions for writ of certiorari arguing that both the January 14 Planning Commission meeting and the January 19 County Commission meeting violated the Open Meetings Act. The trial court held that the Planning Commission "did not act arbitrarily or capriciously by unanimously approving the Settlement Agreement" and there was "material evidence in the record to support the decision of the Planning Commission." With respect to the decision of the County Commission, the court further held:

> [U]nder the totality of the circumstances, this court is of the opinion that the public notice given for the regularly scheduled meeting of the Dickson County Commission on January 19, 2021, at which the Settlement Agreement with Titan Partners was discussed and approved constituted "adequate public notice" under the Tennessee Open Meetings Act. As noted above, Tennessee law does not require an agenda for notice to the public to comply with the Act.

Petitioners appeal from the trial court's approval of both the Planning Commission and County Commission's decisions and raise the following issues that we have consolidated and summarized as follows: (1) whether the Planning Commission violated the Open Meetings Act by failing to include the settlement agreement as a topic on the published agenda; (2) whether the Planning Commission's executive sessions violated the Open Meetings Act; (3) whether the County Commission's public notice was adequate under the Open Meetings Act.

---

[2] For example, one commissioner asked whether the County was agreeing to combine any property for the widening of the site; one commissioner asked a question about section 5.2 of the agreement relating to the Board of Zoning Appeals case; and another commissioner questioned whether it was appropriate, given the other pending litigation, to settle the Titan Partners' suits.

STANDARD OF REVIEW

When reviewing a certiorari proceeding, appellate courts apply a limited standard of review. *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005). Specifically, judicial review of a common-law writ of certiorari consists of determining whether "that decision maker exceeded its jurisdiction, followed an unlawful procedure, acted illegally, arbitrarily, or fraudulently, or acted without material evidence to support its decision." *Id.* (citing *Petition of Gant*, 937 S.W.2d 842, 844-45 (Tenn. 1996)); *see also* Tenn. Code Ann. § 27-8-101. "At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached." *Powell v. Parole Eligibility Rev. Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994).

ANALYSIS

The issues raised by the Petitioners require us to examine Tennessee's Open Meetings Act (sometimes referred to as "Tennessee's Sunshine Law"). The policy and purpose of the Open Meetings Act is set forth in Tenn. Code Ann. § 8-44-101(a): "The general assembly hereby declares it to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret." *See also Metro. Air Rsch. Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Cty.*, 842 S.W.2d 611, 616 (Tenn. Ct. App. 1992) ("Public knowledge of the manner in which governmental decisions are made is an essential part of the democratic process."). To effectuate this purpose, the Open Meetings Act requires that meetings be open to the public and that "adequate public notice" be given of the regular and special meetings of government bodies, among other things. *See* Tenn. Code Ann. §§ 8-44-102, -103. "Adequate public notice" is not defined in the statute, but it has been interpreted to mean sufficient notice "under the circumstances, or such notice based on the totality of the circumstances as would fairly inform the public." *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn. 1974). The notice required by the Open Meetings Act is adequate when it "gives interested citizens a reasonable opportunity to exercise their right *to be present* at a governing body's meeting." *State ex rel. Akin v. Town of Kingston Springs*, No. 01-A-01-9209-CH00360, 1993 WL 339305, at *5 (Tenn. Ct. App. Sept. 8, 1993) (emphasis added); *see also Fisher v. Rutherford Cty. Reg'l Plan. Comm'n*, No. M2012-01397-COA-R3CV, 2013 WL 2382300, at *6 (Tenn. Ct. App. May 29, 2013) (noting that the Tennessee Open Meetings Act "requires notice of the meeting itself and does not speak to notice of the content of the meeting" for regularly scheduled meetings). Moreover, a published agenda is not a required component of adequate notice for regular meetings under the Open Meetings Act. *See Fisher*, 2013 WL 2382300, at *6.[3]

_____

[3] When interpreting the phrase "adequate public notice," the *Fisher* Court pointed out that:

If a meeting is conducted in violation of the Open Meetings Act, actions taken at that meeting "shall be void and of no effect; provided that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned." Tenn. Code Ann. § 8-44-105. Important to our resolution of this case is a narrow exception to the Open Meetings Act which arises when public bodies discuss pending litigation with their attorneys, in which the public body is a named party. This Court has held that "discussions between a public body and its attorney concerning pending litigation are not subject to the Open Meetings Act." *Smith Cty. Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 335 (Tenn. 1984). In addition, our courts have recognized that a violation of the Open Meetings Act does not completely foreclose the government body from ever acting on the measure that was the subject of the violation. *See Neese v. Paris Special Sch. Dist.*, 813 S.W.2d 432, 436 (Tenn. Ct. App. 1990) (citations omitted). Even if a violation of the Open Meetings Act occurred, the governing body's action may stand when there was a "new and substantial reconsideration of the issues involved . . . ." *Id.*

Petitioners rely heavily on this Court's opinion in *Neese* to support their arguments that both the regularly scheduled Planning Commission and County Commission meetings held in January 2021 were held in violation of the Open Meetings Act; therefore, a thorough review of the *Neese* opinion is warranted here. In *Neese*, the Board of Education of the Paris Special School District ("the board") was considering the educational concept of "clustering" to correct certain racial and socio-economic imbalances that existed in the school system. *Id.* at 433. In connection with their decision-making on this topic, four of the seven school board members, as well as the school superintendent, met for two days at an out-of-state "retreat" to discuss the advantages and disadvantages of clustering. *Id.* At the board's regular meeting in January, the board alleged an announcement was made regarding the retreat; however, the minutes of that meeting did not reflect such an announcement. *Id.* at 435. Nevertheless, a newspaper article summarizing the January board meeting mentions that the board agreed on a date for an out-of-state retreat, stating, "two major items the board will look at during the retreat will be any word received from the attorney general on a proposed merger of the county and city school systems, and the recent drop in . . . enrollment." *Id.* A local radio station also reported that the board voted to hold an out-of-state retreat. *Id.* Less than a week after the retreat, the board held its regularly scheduled February meeting. *Id.* at 433. At that meeting, the board directed the school superintendent to "develop a formal plan for clustering" and to present the plan at

---

[T]he legislature could have defined 'adequate public notice,' but did not and has not since the statute was enacted in 1974. Had the legislature intended to require notice of the agenda for every meeting, whether regular or special, it could easily have said so at any time . . . . Other states have. *See, e.g.*, Ariz. Rev. Stat. Ann. § 38.431.02(G); Colo. Rev. Stat. Ann. § 24-6-402(c).

*Fisher*, 2013 WL 2382300, at *6 n.2.

the following regular meeting. *Id.* The school superintendent presented the plan for clustering at the March meeting, at which community members participated in a three-hour question and answer session, and the Board formally approved the plan at the same meeting. *Id.* at 433, 437. On May 1, a lawsuit was filed alleging that the out-of-state retreat violated the Open Meetings Act. *Id.* at 433-34.

In analyzing the issues surrounding the out-of-state retreat, the *Neese* court first determined that the retreat, which involved a quorum of the Board, constituted a "meeting" under the Open Meetings Act and was subject to the requirements of the Act. *Id.* at 435. Next, the Court considered whether, under the "totality of the circumstances[,]" notice of the out-of-state meeting was adequate. *Id.* at 435-36. The Court emphasized that the "intent" of the superintendent was to "discuss the issue of clustering *privately* with Board members." *Id.* at 435 (emphasis added). Indeed, when the superintendent was questioned regarding why clustering was not "discussed openly at Board meetings [he] responded, 'The problem that led to clustering has racial overtones. It was not—I did not feel it was in the best interest to be exposing racial imbalances to the public.'" *Id.* The *Neese* Court determined that under the totality of the circumstances "the public had a right to be informed that the issue of clustering would be extensively discussed" at the two-day out-of-state retreat, especially because the retreat was convened specifically for the purpose of discussing clustering. *Id.* at 435-36. The court characterized the notice provided as "misleading" and determined that under this particular set of facts, notice was insufficient. *Id.* at 436. Ultimately, however, the *Neese* court upheld the action of the board, reasoning:

> We do not believe that the legislative intent of this statute was forever to bar a governing body from properly ratifying its decision made in a prior violative manner. However, neither was it the legislative intent to allow such a body to ratify a decision in a subsequent meeting by a perfunctory crystallization of its earlier action. We hold that the purpose of the act is satisfied if the ultimate decision is made in accordance with the Public Meetings Act, and if it is a new and substantial reconsideration of the issues involved, in which the public is afforded ample opportunity to know the facts and to be heard with reference to the matters at issue.

*Id.* (citing *Alaska Cmty. Coll. Fed'n of Tchrs., Local No. 2404 v. Univ. of Alaska*, 677 P.2d 886, 891 (Alaska 1984)).

Relying upon *Neese*, Petitioners urge us to find that 1) the Planning Commission's agenda for the January 14 meeting should have included the settlement agreement, and because it did not, the meeting was held in violation of the Open Meetings Act; and 2) the County Commission should have provided notice that the settlement agreement was going to be discussed at the regularly scheduled meeting because the fuel terminal was of "pervasive importance" to the public. We decline to make such holdings. The Open Meetings Act "requires notice of the meeting itself and does not speak to notice of the

content of the meeting," and our jurisprudence does not interpret the Open Meetings Act to require an agenda prior to a regular meeting. *Fisher*, 2013 WL 2382300, at *6. In *Neese*, the meeting at issue was a "special meeting" convened out-of-state for the purpose of privately discussing a sensitive topic. *See* Tenn. Code Ann. § 8-44-103(a), (b) (distinguishing between "regular" and "special" meetings). Moreover, there were no members of the public present at the out-of-state retreat in *Neese*.

In the case before us, the settlement agreement was discussed at a regularly scheduled meeting for which public notice was given and a livestream of the meeting was provided on-line. Indeed, one of the Petitioners was present at both the Planning Commission and County Commission meetings. While the published agenda for the Planning Commission meeting did not indicate that the settlement agreement was going to be covered, we do not read the Open Meetings Act as requiring the Planning Commission to disclose the content of its regularly scheduled meeting. The Planning Commission controls its agenda, and the Planning Commission properly amended its agenda at the beginning of the meeting. The settlement agreement was summarized paragraph by paragraph and discussed openly, along with the other business of the meeting. Under these circumstances, we find that the notice of the regularly scheduled January Planning Commission meeting was adequate under the Open Meetings Act. Likewise, we do not read the Open Meetings Act as requiring the County Commission to disclose the content of its regularly scheduled meeting.[4]

---

[4] Although Petitioners do not raise it as a separate issue on appeal, they also assert that *Neese* stands for the proposition that the public should have been given the opportunity to "be heard" at the Planning Commission and County Commission meetings in January. We emphasize that the Tennessee Open Meetings Act does not guarantee citizens the right to participate or be heard in meetings. *Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 150 (Tenn. Ct. App. 1998) (citing *Whittemore*, 835 S.W.2d at 18) ("While the [Open Meetings] Act requires all meetings of entities subject to the Act be open to the public, it does not guarantee all citizens the right to participate in the meetings."); *see also State ex rel. Akin*, 1993 WL 339305, at *5. When discussing a governing body's ability to cure a prior violation of the Open Meetings Act (known as the "Cure Doctrine"), the *Neese* Court somewhat overstated the requirements of the Act when it suggested that a prior violation of the Open Meetings Act can be overcome when "a new and substantial reconsideration of the issues involved, in which the public is afforded ample opportunity to know the facts *and to be heard* with reference to the matters at issue." *Neese*, 813 S.W.2d at 436 (emphasis added). While the public did participate and offer opinions on clustering during a question and answer session at the board meeting in the *Neese* case, and that was clear evidence that the Board did not simply rubberstamp its prior approval of the clustering plan, the three-hour-long public discussion was not necessarily required by the Open Meetings Act. In addition, the Alaska Supreme Court case *Neese* relied upon, which interprets an entirely different version of an open meetings act, does not stand for the proposition that the public must be heard during "a true de novo consideration of [a prior] defective action." *Alaska Cmty. Coll.*, 677 P.2d at 891. Instead, the Alaska Court stated:

> Ideally the plaintiff is entitled to be placed in the position he would have been in had the violation never occurred. That position is not one where the adverse decision is never made. Instead it is one where the decision, adverse or not, is taken in conformity with the sunshine laws.

Next, Petitioners contend that the Commissions "abused . . . the executive session exception to circumvent the Open Meetings Act." In *Smith County Education Association v. Anderson*, our Supreme Court explored the impact of the attorney-client exception to the Open Meetings Act and squarely determined that "discussions between a public body and its attorney concerning pending litigation are not subject to the Open Meetings Act." *Smith Cty.*, 676 S.W.2d at 335. The Court emphasized, however, that the exception is "narrow":

> [c]lients may provide counsel with facts and information regarding the lawsuit and counsel may advise them about the legal ramifications of those facts . . . [h]owever, once any discussion, whatsoever, begins among the members of the public body regarding what action to take based upon advice from counsel, whether it be settlement or otherwise, such discussion shall be open to the public . . . .

*Id.* at 334. We note that Petitioners have proffered nothing more than speculation as to the content of the executive sessions during which lawyers met with commissioners to discuss Titan Partners' lawsuits. There is no evidence, affidavits, deposition testimony, or otherwise of misuse of these executive sessions or any indication that impermissible deliberations occurred. Therefore, in light of the on-the-record discussion of the settlement agreement, detailed earlier in this opinion, we discern no evidence that improper deliberations regarding the settlement took place during an executive session. In sum, we find that the executive sessions conducted by commissioners and their attorneys fell within the attorney-client exception established in the *Smith County* case, and no violation of the Open Meetings Act occurred.

CONCLUSION

For the foregoing reasons, we hold that neither the Planning Commission nor the County Commission violated the Open Meetings Act, and the Petitioners arguments to the contrary fail. The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE

---

*Id.* at 891 n.10. Regardless of the technical holding in *Neese*, the Cure Doctrine is not implicated under these facts, as we have held that the Open Meetings Act was not violated in January 2021, and therefore there was no violation to cure. To the extent there was a prior violation of the Act in April 2020, that violation was rendered moot by the Planning Commission's vote to deny the project in July 2020. *See Turnbull*, No. M2021-00542-COA-R3-CV.