IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 7, 2011 Session

## ARLIE "MAX" WATSON ET AL. V. LARRY WATERS ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 08-8-358      David R. Duggan, Judge**

**No. E2010-01663-COA-R3-CV - Filed February 27, 2012**

This action was filed by Arlie "Max" Watson, an elected county commissioner of Sevier County, and three other citizens and taxpayers of Sevier County, Peggy Marshall, John A. Meyers and Gerra Davis-Mary (collectively "the Plaintiffs"). They purported to act both individually and on behalf of the State of Tennessee. They named as defendants the county mayor, Sevier County, and the county commission as a body (collectively "the Defendants"). They sought to invalidate certain actions – primarily the commission's adoption of certain procedural rules at a meeting held June 23, 2008 – and to disgorge the mayor of benefits he "wrongly" received. The trial court initially dismissed all claims – except those made under the Open Meetings Act – for lack of standing. It ordered that the caption be amended to reflect that the Plaintiffs were acting individually and not on behalf of the State. The trial court allowed the Open Meetings Act claims to proceed through discovery. Both sides of the dispute filed a motion for summary judgment. With the exception of a finding that minutes of some committee meetings were not properly filed in both the office of the county clerk and the county mayor as required by a local rule, the court found no deficiencies in the challenged actions. It granted the Defendants summary judgment as to all of the Open Meetings Act claims. The Plaintiffs appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Herbert S. Moncier and David S. Wigler, Knoxville, Tennessee, for the appellants, Arlie "Max" Watson, Peggy Marshall, John A Meyers, and Gerra Davis-Mary.

Rhonda L. Bradshaw, Knoxville, Tennessee, for the appellees, Larry Waters, Sevier County Board of Commissioners, and Sevier County Tennessee.

# OPINION

## I.

This is one of three cases the Plaintiffs filed to challenge certain actions of the mayor and board of commissioners of Sevier County. The other two cases were dismissed for lack of standing. Those cases were consolidated on appeal and affirmed in *State ex rel. Watson v. Waters*, No. E2009-01753-COA-R3-CV, 2010 WL 3294109 (Tenn. Ct. App. E.S., filed Aug. 20, 2010)("*Watson I*"). In the present case, in addition to raising "standing" issues, the Plaintiffs made allegations of violations of the Open Meetings Act, Tenn. Code Ann. § 8-44-101 *et seq*. (2011) – allegations that they did not make in the other two cases. The Plaintiffs' brief in the present case contains a concise and, therefore, useful characterization of their claims and the disposition of those claims:

> Sevier County Commissioner Arlie "Max" Watson and Sevier County citizens and taxpayers Peggy Marshall, John A. Meyers, and Gerra Davis-Mary sued Sevier County Commission Chairman and Sevier County Mayor, Larry Waters, . . . the Sevier County Commission and Sevier County Tennessee [(referred to individually in this opinion as "the Mayor," "the Commission" and "the County")] for declaratory judgment as to whether it was lawful for [the Mayor] to also hold the Commission appointed office of a non-elected Commissioner as it's [sic] Chair; whether [the Mayor] was a member of a "governing body" consisting of himself, as appointed Commission Chair, and the 25 elected County Commissioners for the purposes of the Open Meetings Act; and whether [the Mayor] had been sworn to hold the office of Chair of the . . . Commission. [The Plaintiffs] sued for removal of [the Mayor]; recovery of benefits paid to [the Mayor] while holding office unlawfully; and for Open Meeting[s] Act violations making void decisions made prior to and resulting in a special called meeting of the Commission and adoption of new rules for the Commission on June 23, 2008.
>
> [The trial court] dismissed all of [the Plaintiffs'] claims except the Open Meeting[s] Act claims holding that Commissioner Watson and the three citizens did not have standing. [The court]

denied [the Plaintiffs'] Tenn. R. Civ. P. 54.02 designation of [the] dismissals as being final and there was no appeal . . . .

The Open Meetings Act claims survived dismissal because [the] Plaintiffs have statutory standing as citizens pursuant to T.C.A. § 8-44-106. Extensive discovery was developed on issues presented by cross-motions for summary judgment on Open Meetings Act claims. On April 4, 2010 [the court] granted [the] County summary judgment on some of the Open Meeting[s] Act claims. [The court] granted summary judgment against [the] County on [the claim that minutes of certain meetings were not properly recorded.]

The trial court held,[1] as a matter of law, that: (1) with the exception of the failure to record the minutes of certain committee meetings, there had been no Open Meetings Act violations regarding certain changes in procedural rules adopted at an open meeting held June 23, 2008, and further that even if there were technical violations concerning the meetings that preceded June 23, those deficiencies were cured by the action taken at the June 23 meeting,

when the proposed rule changes were fully discussed and deliberated extensively by the full Commission at its meeting on June 23, 2008, there being no evidence of any secret deliberations with respect to that meeting, while there is affirmative, negating evidence that there were no secret deliberations with respect to that meeting, that adequate public notice was given of that meeting, and that minutes of that meeting were properly kept, recorded and filed, as will be subsequently addressed herein;

[(2)] adequate public notice was given of each of the meetings on February 18, 2008, May 12, 2008, May 19, 2008, June 11, 2008, and June 23, 2008;

and (3) because the Commission had adopted rules requiring that minutes of Commission meetings "be filed both in the County Clerk's office and in the Mayor's office," and not all "steering committee" minutes had been filed in both offices, the Defendants had violated the Open Meetings Act by not making the minutes of all public meetings open to the public as

---

[1]In stating the court's three holdings, we have utilized some of the court's direct quotes, *i.e.*, the indented material.

required by law.  The court ordered the Defendants "to file all minutes of future meetings of the Board of Commissioners, and its committees, in all offices where filing is required under the local procedural rules."  The court also held that the failure to file all minutes in both county offices did not void the action taken at the June 23 meeting because all minutes were on file in one or the other of the two offices and that the minutes of the June 23 meeting were properly filed in both.

The Plaintiffs filed motions to alter or amend which the trial court denied in one order. The Plaintiffs timely filed a notice of appeal.

II.

The Plaintiffs raise six issues – the first of which has six "question" sub-issues – all of which we have quoted verbatim except for random capitalization that we have deleted:

Is Tennessee's judge-made standing rule constitutional?

Does Tennessee's judge-made standing rule conflict with the established public policy of Tennessee?

Does Tennessee's judge-made standing rule exceed the Tenn. Const. Art. VI, §§ 1 and 3 authority of the judiciary and violates [sic] the separation of powers of the legislature in violation of Art. II, § 2?

Does Tennessee's judge-made standing rule violate [the Plaintiffs'] Art. 1, § 23 and First Amendment Petition Clause Rights?

Does Tennessee's judge-made standing rule violates [sic] [the Plaintiffs'] privileges, liberties and rights guaranteed by Tenn. Const. Art. I, §§ 1, 2, 8, 17, 19, and 21?

Does Tennessee's judge-made standing rule violate [the Plaintiffs'] First and Fourteenth Amendment right to Political Association?

>Does Tennessee's judge-made standing rule apply
>where the plaintiff is the State of Tennessee?
>
>[Does the Complaint state] a *prima facie* meritorious case?
>
>Do [the Plaintiffs] have "municipal taxpayer" standing?
>
>Were [the Plaintiffs] denied Tenn. Const. Art. I, § 6 right to a
>jury trial by the trial court granting summary judgment where
>there were material factual disputes?
>
>Did the trial court err by failing to apply T.C.A. § 8-44-105 to
>void proceedings that were required to have occurred prior to
>being a valid June 23, [2008] meeting to adopt new commission
>rules?
>
>Did . . . Commissioner Arlie "Max" Watson have a special
>interest not shared by the general public in the adoption of rules
>that regulated his conduct as a commissioner?

(Italics in original.)

## III.

These issues all present questions of law. We review a trial court's resolution of questions of law de novo with no presumption of correctness. *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

## IV.

## A.

The issues naturally separate themselves into those that relate to the claims dismissed for lack of standing and those that relate to the Open Meetings Act claims dismissed on summary judgment. We will address the issues related to standing first, and the issues related to the summary judgment last.

B.

Several of the issues regarding standing were directly addressed in **Watson I**. The argument that Commissioner Watson had standing by virtue of his position as a commissioner was made and rejected in **Watson I**. "[A] citizen's status as a public official does not confer a "special interest" that is sufficient to establish standing." **Watson I** at * 6 (*citing* **Malone v. City of Knoxville**, No. E2002-00734-COA-R3-CV, 2003 WL 21018633 at *3 (Tenn. Ct. App. E.S., filed May 5, 2003)).

The Plaintiffs' argument that they had "municipal taxpayer" standing is tied to their request that the Mayor should be disgorged of any benefits he received while "wrongfully" holding county offices. The "municipality" is Sevier County. The Plaintiffs made the argument in **Watson I** "that they have standing as taxpayers of Sevier County." **Id**. at *7. We held, the "Plaintiffs cannot establish standing on this basis." **Id**. We adhere to our holding in **Watson I**.

The issue of whether the Plaintiffs stated a prima facie case is their segue into an argument that certain language in **Bennett v. Stutts**, 521 S.W.2d 575 (Tenn. 1975), created an exception to the normal rules of standing if the "case is prima facie meritorious." **Id**. at 577. We addressed this very same argument in **State ex rel DeSelm v. Owings**, 310 S.W.3d 353 (Tenn. Ct. App. 2009). Our analysis in **DeSelm** bears repeating:

> As in the instant case, the suit in **Bennett** was brought by "citizens, residents and taxpayers." **Id**. at 576. As an aside, we note, and find interesting, that the Court in **Bennett** said that the complaint there was dealing with a "*patent* public wrong." **Id**. (Emphasis added.) This statement was made without any equivocation on the part of the High Court. The complaint in **Bennett** sought to invalidate the election of an individual to the position of County Superintendent of Public Instruction because "the election . . . was conducted by secret ballot in violation of the entirely mandatory provisions of" the applicable statute. **Id**. Again, no equivocation by the High Court on the issue of a statutory violation. The complaint sought to prevent the new superintendent "from taking office or performing any of the duties of office." **Id**. On appeal, the Supreme Court held, in affirming the trial court, that "[t]he suit . . . must fail for plaintiff's lack of standing to sue." **Id**.

Early on in the opinion, the Supreme Court stated the "settled law":

> It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally.

*Id*. (citations omitted). The plaintiffs in the instant case acknowledge that this is a well-established general principle. However, they strenuously argue that *Bennett*, later in that opinion, carves out an exception to this general rule. They rely upon the following language in *Bennett*:

> We recognize that the requirement that suits in the nature of a *quo warranto* and those seeking to redress public wrongs be brought by the District Attorney General can create insurmountable problems. Public spirited citizens should not be stifled or stopped in their search for solution to public wrongs and official misconduct such as are involved in this case.
>
> If the District Attorney General, in matters such as this, should act arbitrarily or capriciously or should be guilty of palpable abuse of his discretion in declining to bring such an action, or in authorizing its institution, the courts will take jurisdiction upon the relation of a private citizen, in the name of the State of Tennessee.
>
> When citizens sue to rectify a public wrong, under these circumstances, a copy of the complaint shall be served upon the District Attorney General. It shall be the duty of the trial court forthwith to conduct an in limine hearing designed to determine whether to permit plaintiffs to proceed. If it be determined that the District Attorney

General's refusal to bring the action, or to authorize the use of his name in its institution, was improper or unjustified, or that plaintiff's case is prima facie meritorious, the trial court shall permit the action to proceed.

*Id*. at 577 (citations omitted). The plaintiffs now before us point out that they served a copy of their complaint on Randall Nichols, the District Attorney General for Knox County. They complain that the trial court failed to hold a hearing to determine whether Attorney General Nichols wrongfully refused and failed to proceed with this action. They contend that *Bennett* stands for the proposition that, if an attorney general, after being notified of a suit, refuses to bring the action or refuses to authorize the use of his or her name and if his or her refusal "was improper or unjustified," plaintiffs such as those in this case will be permitted to proceed, *regardless of whether the plaintiffs have standing under the general principle reiterated in Bennett and quoted by us in this opinion*. We disagree with the plaintiffs' interpretation.

*Bennett's* reference to the district attorney general is simply a recognition of the unique role of the attorney general in suits of this nature. *Id*. However, despite this unique role, *Bennett* makes clear that the attorney general cannot "act arbitrarily or capriciously" or "be guilty of palpable abuse of his discretion in declining to" pursue or allow such a suit to be pursued in the attorney general's name. *Id*. *Bennett* does *not* expressly say that the failure to act of a recalcitrant attorney general will, *ipso facto*, convert a plaintiff, *without standing in the traditional sense*, into a plaintiff with standing. In the absence of such an express holding by the High Court, we conclude that the failure of an attorney general to act or allow his or her name to be used, simply means that the attorney general's preeminent role in this area will give way to a *plaintiff with standing*.

We find no error in the trial court's failure to conduct a hearing on the "attorney general" issue discussed in *Bennett*. We say this because a ruling that General Nichols was improperly refusing to act or permit others to act in his name would not

benefit these plaintiffs. The record clearly reflects that the plaintiffs do not "aver special interest or a special injury not common to the public generally." *Id*. at 576. We do not doubt that these plaintiffs are "public spirited citizens," active in the political and public affairs of the community, "politically associated persons," and that they have participated in the filing of many lawsuits in an effort to remedy and correct what they perceive to be wrongful and illegal conduct by public officials. None of this, however, vests them with standing. In the absence of standing, they cannot proceed with this action.

*Id*. at 358-59 (emphasis in original). We reject the Plaintiffs' argument that they have standing predicated upon the "meritorious" nature of their claims for the reasons stated by us in *DeSelm*.

Our holding in *DeSelm* also disposes of the Plaintiffs' assertion that they are proceeding on relation of the state, therefore they do not need standing. We reject that argument.

Although they did not list it as a separate issue, the Plaintiffs argue that because their Open Meetings Act claims had merit, as shown by their ability to prevail on one aspect of their claim, they acquired "pendent" standing for their other claims. The Plaintiffs acknowledge that no Tennessee case has accepted such a proposition, but argue that it "derives from a federal practice to accept jurisdiction over state claims that arise out of the same subject matter as federal claims." We agree with the Defendants that there is little more than "imagination" that ties the concept of pendant jurisdiction as employed by the federal courts, and the requirement of standing as discussed in *DeSelm* and *American Civil Liberties Union v. Darnell*, 195 S.W.3d 612, 619-20 (Tenn. 2006). We will not invent a doctrine of "pendent" standing to facilitate the Plaintiffs' claims in this case.

The Plaintiffs make the novel argument, or arguments, that the requirement of "standing" is simply an invention of the judiciary, and that it violates numerous constitutional provisions, including, limitations on judicial power found at Tenn. Const. Art. VI §§ 1 and 3; separation of powers found at Tenn. Const. Art II § 2; rights to petition for redress found at Tenn. Const. Art. I § 23 and the First Amendment to the United States Constitution; "privileges, liberties and rights" found at Tenn. Const. Art. I §§ 1, 2, 8, 17, 19, and 21; as well as their rights found in the First and Fourteenth Amendments to the United States Constitution. The Plaintiffs argue also that the requirement of standing violates the established public policy of promoting intervention against public wrongdoers. The Plaintiffs further argue that none of the decisions on standing, including our *DeSelm* opinion,

and the Supreme Court's recent opinion in *Fannon v. City of Lafollette*, 329 S.W.3d 418, 424 (Tenn. 2010), "considered the [c]onstitutional rights of [the Plaintiffs] asserted in this appeal pursuant to Tenn. Const. Art. I, §§ 1, 2, 8, 17, 21 and 23 or the First Amendment Petition Clause." The Plaintiffs assert that the analysis of a challenge to a court rule is the same analysis as that for a constitutional challenge of a statute. Presumably, the Plaintiffs would have us overrule our Supreme Court on the supposition that the High Court completely ignored both the state and the federal constitution in *Fannon* and all the cases that preceded it.

The Defendants are quick to point out that all these constitutional arguments were formulated and asserted for the first time on appeal. The Plaintiffs did not file a reply brief so the Defendants' assertion has not been challenged on this appeal. Nevertheless, we have not relied solely on the Defendants' brief. We have reviewed the record in its entirety for any argument by the Plaintiffs that the requirement of standing constitutes a violation of their constitutional rights. We found a "fifth" motion to amend the complaint and numerous motions to alter or amend filed both before and after the final judgment, but we found nothing that asserts the requirement of standing violates the Plaintiffs' constitutional rights. Therefore, we must agree with the Defendants that the Plaintiffs have raised these issues for the first time on appeal. "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal and this rule applies to an attempt to make a constitutional attack upon the validity of a statute for the first time on appeal unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn.1983). We are unwilling to conclude that the requirement of standing that has been in place for decades if not centuries and has been repeatedly reaffirmed by our Supreme Court is obviously unconstitutional. Accordingly, we hold that the trial court did not err in dismissing all claims, except the Open Meetings Act claims, for lack of standing.

C.

We now turn our attention to the trial court's holding on summary judgment that the action taken in the commission meeting held June 23, 2008 did not violate the Open Meetings Act.[2] The Plaintiffs argue that the trial court erred in granting summary judgment because there were factual disputes in the record. The Plaintiffs go one step further and assert that their constitutional right to a jury trial provided by Tenn. Const. Art. I , § 6 was

---

[2]For the purposes of this appeal, it is not necessary that we reproduce lengthy excerpts of the Act. It is enough to say that, in general, the Open Meetings Act requires that governing bodies conduct their deliberations and make their decisions in public. Tenn. Code Ann. §§ 8-44-101 & -102. The public must be given notice of the meetings and minutes must be made and kept on file. *Id*. §§ 103 & 104.

violated by the trial court in granting summary judgment. Tennessee's summary judgment procedure does not offend a litigant's right to a jury trial. *See **Hannan v. Alltel Publ. Co.**, 270 S.W.3d 1, 17 n.14 (Tenn. 2008) (Koch, J., dissenting); **Owen v. Stanley**, 739 S.W.2d 782, 786 (Tenn. Ct. App. 1987) (*overruled on other grounds* by **Matlock v. Simpson**, 902 S.W.2d 384 (Tenn. 1995)). Thus, our inquiry in this case is simply whether the trial court erred in finding that the Defendants negated elements of the claims that the rules of procedure adopted in the meeting of June 23, 2008 were adopted in violation of the Open Meetings Act.

It is appropriate at this point to briefly review the key principles that control summary judgment:

> Summary judgments are not disfavored procedural devices. **Eskin v. Bartee**, 262 S.W.3d 727, 732 (Tenn. 2008); **Fruge v. Doe**, 952 S.W.2d 408, 410 (Tenn. 1997). They are proper in virtually any civil case that can be resolved on legal issues alone. **Eskin v. Bartee**, 262 S.W.3d at 732; **Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.**, 244 S.W.3d 302, 309 (Tenn. 2007). Thus, trial courts should grant properly made and supported summary judgment motions when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion – that the moving party is entitled to a judgment as a matter of law. **Griffis v. Davidson County Metro. Gov't**, 164 S.W.3d 267, 283-84 (Tenn. 2005); **Pero's Steak & Spaghetti House v. Lee**, 90 S.W.3d 614, 620 (Tenn. 2002).
>
> The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law. **Martin v. Norfolk S. Ry.**, 271 S.W.3d 76, 83 (Tenn. 2008); **Amos v. Metro. Gov't of Nashville & Davidson County**, 259 S.W.3d 705, 710 (Tenn. 2008). For facts to be considered at the summary judgment stage, they must be included in the record, Tenn. R. Civ. P. 56.03, and they must be admissible in evidence. **Byrd v. Hall**, 847 S.W.2d 208, 215-16 (Tenn. 1993); Tenn. R. Civ. P. 56.06. When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute

exists, (3) whether the factual dispute is material to the grounds of the summary judgment.

Summary judgments are not permitted when a case's determinative facts are in dispute. Accordingly, assuming that the facts are found in the record and that they would be admissible, the second inquiry is whether a factual dispute actually exists. If reasonable minds could justifiably reach different conclusions based on the evidence at hand, then a genuine question of fact exists. *Martin v. Norfolk S. Ry.*, 271 S.W.3d at 84; *Louis Dreyfus Corp. v. Austin Co.*, 868 S.W.2d 649, 656 (Tenn. Ct. App. 1993). If, on the other hand, the evidence and the inferences reasonably drawn from the evidence would permit a reasonable person to reach only one conclusion, then no material factual dispute exists, and the question can be disposed of as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86, 91 (Tenn. 1999). A motion for summary judgment should be denied if there is any doubt regarding whether a genuine issue of fact exists. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 41 (Tenn. 2005); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998) (*quoting Byrd v. Hall*, 847 S.W.2d at 211).

*Not all factual disputes require the denial of a motion for summary judgment*. Many factual disputes are minor or are not germane to the grounds of the motion. Thus, *factual disputes warrant denial of a motion for summary judgment only when they are material*. Tenn. R. Civ. P. 56.04 (requiring a moving party to demonstrate that there is no genuine dispute as to any "material fact"). To be material, a fact must be germane to the claim or defense on which the summary judgment is predicated. *Eskin v. Bartee*, 262 S.W.3d at 732; *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999).

Summary judgments do not benefit from a presumption of correctness on appeal. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007). Therefore, in each case, the

reviewing courts must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Eskin v. Bartee*, 262 S.W.3d at 732; *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Staples v. CBL Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). The reviewing courts must also consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d at 373-74; *Abbott v. Blount County*, 207 S.W.3d 732, 735 (Tenn. 2006).

*Green v. Green*, 293 S.W.3d 493, 513-14 (Tenn. 2009)(emphasis added).

The Plaintiffs' challenge to the grant of summary judgment in this case consists primarily of 47 consecutive paragraphs stating that they "produced evidence that" certain facts were true or, alternatively, disputed. Most of these assertions concern actions that preceded the commission meeting of June 23, 2008, at which the new rules of procedure were adopted. This argument is closely tied to a later argument that no action at the June 23, 2008 meeting was possible if the meetings that preceded it were in violation of the Open Meetings Act. We believe the Plaintiffs' arguments ignore the key principle recited above that a factual dispute will not defeat a summary judgment if it is rendered immaterial by an undisputed fact.

The trial court correctly noted that the Plaintiffs alleged, and therefore admitted, that public notice was given of the meeting held on June 23, 2008. The minutes of that meeting are in the record and reflect a discussion of the new procedural rules with considerable input from several of the Plaintiffs. The great majority of the commissioners that attended the June 23 meeting supplied affidavits stating that they did not have any private discussions concerning the matters on the meeting agenda. The evidence the Plaintiffs offered to counter those affidavits was proof that the number of telephone calls between the various commissioners increased near the time of the meeting and testimony that one of the Plaintiffs heard an exchange between the commissioners before the meeting convened to the effect that they, the commissioners, were "ready to do this." The trial court correctly noted that the law does not prohibit all informal discussions between members of a governing body; it prohibits using informal discussions, instead of public meetings, as the vehicle for deliberating or deciding public business. Tenn. Code Ann. § 8-4-102 (c); *Neese v. Paris Special School District*, 813 S.W.2d 423, 435 (Tenn. Ct. App. 1990). The trial court concluded that, in light of the specific denials by almost all of the commissioners, the Plaintiffs' circumstantial evidence was just too "general" to support an inference that the commissioners deliberated or decided public business in their telephone calls or their informal exchanges before the

meeting. It would take a healthy dose of speculation to turn the reference to being "ready to do this" or the increase in telephone calls into a conclusion that the commissioners had already discussed and decided the matters on their agenda before they ever stepped into the meeting room.

The trial court ultimately concluded

> that *even if* there was [a] violation of the Act prior to the June 23, 2008 meeting of the Board of Commissioners, any such violation was remedied and cured when the proposed rule changes were fully discussed and deliberated extensively by the full Commission at its meeting on June 23, 2008, there being no evidence of any secret deliberations with respect to that meeting, while there is affirmative, negating evidence that there were no secret deliberations with respect to that meeting, that adequate public notice was given of that meeting, and that minutes of that meeting were properly kept, recorded and filed . . . .

(Emphasis in original.) The law fully supports the trial court's conclusion that one violation of the Open Meetings Act does not "forever . . . bar a governing body from properly ratifying its decision made in a prior violative manner." *Neese*, 813 S.W.2d at 436. The ratification cannot be by "perfunctory chrystallization" of the earlier violation, but the Act is satisfied if

> the ultimate decision is made in accordance with the Public Meetings Act and if it is a new and substantial reconsideration of the issues involved, in which the public is afforded ample opportunity to know the facts and to be heard with reference to the matters at issue.

*Id*. We have reviewed the record and agree with the trial court that the Defendants conclusively established that, regardless of violations that may or may not have transpired before the June 23, 2008, meeting of the full commission, the Act was honored with respect to that meeting. We conclude that violations that allegedly preceded that meeting are not germane and therefore do not preclude summary judgment. Accordingly, we hold that the trial court did not err in granting the Defendants summary judgment upholding the actions taken at the June 23, 2008 meeting.

V.

The judgment of the trial court is affirmed.  Costs on appeal are taxed to the appellants, Arlie "Max Watson, Peggy Marshall, John A Meyers, and Gerra Davis-Mary. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.


_____
CHARLES D. SUSANO, JR., JUDGE