# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 8, 2012

## DAVID DESGRO v. PAUL PACK d/b/a RESI CHEK

### Appeal from the Circuit Court for Carter County
### No. C12376     Hon. Thomas J. Seeley, Jr., Judge

---

### No. E2012-00918-COA-R3-CV-FILED-JANUARY 8, 2013

---

Plaintiff, David Desgro, alleged that he hired defendant, Paul Pack d/b/a Resi Chek, to perform an inspection on a house plaintiff wanted to purchase. After defendant inspected the house and reported the house had no major problems, plaintiff purchased the house in reliance on defendant's report. Plaintiff claims that he then discovered multiple serious issues with the house, including plumbing problems, insulation and heat pump problems, and inadequate floor support. Plaintiff filed suit 13 months after the inspection was completed, and defendant moved for summary judgment, claiming that plaintiff's signed contract with defendant provided that plaintiff must file suit on any claims within one year of the date of inspection. The trial court found that plaintiff signed such an agreement and that the contractual limitations period of one year was reasonable. The trial court granted summary judgment to defendant, ruling that plaintiff's claims were untimely. Plaintiff appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

Kathryn J. Dugger-Edwards, Elizabethton, Tennessee, for the appellant, David Desgro.

John B. McKinnon III, Johnson City, Tennessee, for the appellee, Paul Pack d/b/a Resi Chek.

## OPINION

## I. BACKGROUND

On January 6, 2009, the parties met at the subject home and plaintiff signed[1] an agreement that was presented to him by defendant regarding performance of the home inspection. This agreement, titled "NACHI Home Inspection Agreement," provides,

> CLIENT shall have no cause of action against INSPECTOR after one year from the date of the inspection.

The inspection was performed that same day. Plaintiff filed this lawsuit on February 2, 2010, more than one year from the date of inspection. The trial court granted summary judgment to defendant, finding that the contractual limitation period was reasonable and enforceable. The trial court stated that plaintiff "had plenty of time to find any deficiency" because he had been living in the home for at least ten months when the contractual limitations period expired.

## II. ISSUES

We consolidate and restate the issues raised on appeal by plaintiff as follows:

A. Whether the agreement was an unenforceable contract of adhesion.

B. Whether the agreement was void as against public policy.

C. Whether the trial court erred in granting summary judgment based on plaintiff's failure to file this lawsuit within one year from the date of the home inspection.

---

[1]At the trial court level, plaintiff disputed that he signed the subject agreement, admitting that he signed something that day but did not know what it was. Defendant presented the original agreement as an exhibit, and testified that it was the document that plaintiff signed. The court was given examples of plaintiff's signature on other documents. The court ultimately found that plaintiff signed the agreement and that defendant's testimony regarding plaintiff's signature on said document was more credible. Plaintiff has not appealed that finding.

## III. STANDARD OF REVIEW

A grant of summary judgment is not presumed correct by this court; rather, this court must "make a fresh determination" in each case that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Watson v. Waters*, 375 S.W.3d 282, 291 (Tenn. Ct. App. 2012). In doing so, this court must consider the evidence in the light most favorable to the non-movant and draw all reasonable inferences in his favor. *Id.*

As this court has previously explained:

> The interpretation and construction of a plain and unambiguous written contract is a question of law for determination by the court. It is the duty of the court to enforce the contract according to its plain terms, and the language used in the contract must be taken and understood in its plain, ordinary and popular sense. However, "the cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles." Courts may determine the intention of the parties "by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms."

*BFS Retail and Commercial Operations LLC v. Smith*, 232 S.W.3d 756, 758 (Tenn. Ct. App. 2007) (citations omitted).

## IV. DISCUSSION

### A.

Plaintiff argues that the agreement at issue was an unenforceable contract of adhesion because it contains unconscionable and oppressive terms. Plaintiff notes that the contract provided that if he failed to notify defendant of adverse conditions within 14 days of discovery, defendant would be released from all liability. Plaintiff also notes that the contract provided that if defendant was negligent, his damages were limited to the amount of the inspection fee. Plaintiff asserts that the language limiting his time for bringing a claim to one year from the date of the inspection was unconscionable and oppressive.

An adhesion contract has been defined as:

a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract . . .. Courts generally agree that '[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.'

*Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (citations omitted). The agreement at issue in this case is a standard form contract that leaves the consumer with little or no choice as to its terms. However, plaintiff did not prove that defendant would not have performed the service if he did not sign the contract. Plaintiff also did not question the terms of the agreement and was not told that he had to sign it to procure the home inspection. Further, he could have sought the service from another provider if he did not agree to the terms of the agreement. As such, the contract is not an adhesion contract. *See, e.g.*, *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359-360 (Tenn. Ct. App. 2001) (holding that the contract was not an adhesion contract where plaintiff was not required to sign the document, when there was no evidence that plaintiff questioned defendant about the contents of the document, and when plaintiff could have bought a van elsewhere if he did not want to sign the contract); *Estate of Mooring v. Kindred Nursing Centers*, No. W2007-02875-COA-R3-CV, 2009 WL 130184, *5(Tenn. Ct. App. Jan. 20, 2009) (holding that the arbitration agreement was not an adhesion contract where proof showed that patient would have been admitted to nursing home even if patient refused to sign arbitration agreement); *Wilson Pharmacy, Inc. v. General Computer Corp.*, No. E2000-00733-COA-R3-CV, 2000 WL 1421561, *3 (Tenn. Ct. App. Sep. 21, 2000) (holding that statements by plaintiff that he did not know of any other computer corporation which would provide a comparable service or that he was offered a standardized contract "on a take-it-or-leave-it basis" were insufficient to show a contract of adhesion).

In *Buraczynski*, the Court was confronted with the question of whether to enforce certain arbitration agreements between a physician and his patients. The Court determined that the agreements were adhesion contracts because (1) the agreements were "standardized form contracts" prepared by the party with superior knowledge of the subject matter - provision of medical services, (2) the agreements were admittedly offered to the patients on a 'take it or leave it' basis, (3) if patients refused to sign the agreements, the physician would have discontinued their medical care, and (4) while the patients "could have refused to sign the arbitration agreements and sought out another physician in the area, that action would have terminated the physician-patient relationship (ordinarily one of trust) and interrupted the course of the patient's treatment." *Buraczynski*, 919 S.W.2d at 320. The Court ultimately enforced the arbitration agreements because the terms were not unconscionable, oppressive,

or outside the reasonable expectations of the parties. *Id.*

In this case, the agreement at issue is not an adhesion contract because it was not shown that plaintiff had to "take it or leave it" or that he was forced to acquiesce to the terms of the agreement to get the service he desired. Plaintiff did not question the terms of the agreement, did not attempt to bargain with the defendant regarding the agreement, and there was no proof that defendant told plaintiff he had to sign the document to obtain the service. Plaintiff stated that he contacted defendant at the recommendation of his realtor, but plaintiff likely could have obtained the service from someone else because plaintiff did not show that defendant was the only home inspector in the area. Accordingly, we do not need to examine the contract's provisions to determine their reasonableness because the agreement at issue is not a contract of adhesion. *See Estate of Mooring*, 2009 WL 130184 at *6.

B.

Plaintiff also argues that the trial court erred in failing to hold that the "exculpatory" clause was void as against public policy. Our Supreme Court has held that an exculpatory clause in a contract is unenforceable when it affects the public interest. *See Crawford v. Buckner*, 839 S.W.2d 754, 758-759 (Tenn. 1992) (finding an exculpatory clause in a residential lease contract to be contrary to public policy); *Olson v. Molzen*, 558 S.W.2d 429, 432 (Tenn. 1977) (holding an exculpatory clause in a contract for medical treatment is contrary to public policy). Home inspections have been deemed by this court to be a "service of great importance to the public," and the exculpatory clauses contained in home inspection agreements have been determined to affect the public interest as well. *Carey v. Merritt*, 148 S.W.3d 912, 918 (Tenn. Ct. App. 2004); *Russell v. Bray*, 116 S.W.3d 1, 8 (Tenn. Ct. App. 2003).

In the *Russell* case, the home inspection agreement contained the following clause:

> BY SIGNING THIS AGREEMENT, CLIENT EXPRESSLY AGREES THAT ANY LIABILITY OF HOMETEAM, ITS EMPLOYEES, AGENTS, OFFICERS, AND DIRECTORS, SHALL BE LIMITED TO THE LESSER OF THE COST TO REPAIR (adjusted for the remaining life of the problem item) OR THE AMOUNT OF THE INSPECTION FEE PAID BY CLIENT.

*Id*. at 3. Similarly, in *Carey*, the agreement stated:

> [t]his company assumes no liability and shall not be liable for any mistakes, omissions, or errors in judgement of an employee beyond the cost of the report. This limitation of liability shall include and apply to all consequential

damages, bodily injury and property damage of any nature.

*Carey*, 148 S.W.3d at 914. In both cases, the exculpatory clauses were held to be void as against public policy and unenforceable.

In this case, plaintiff argues that the clause stating that plaintiff "shall have no cause of action against INSPECTOR after one year from the date of inspection" is also an exculpatory clause which should be held to be void as against public policy. Defendant argues that this is not an exculpatory clause, but rather a contractual limitation on the time period for filing suit, which the courts of this State have consistently upheld.

Tennessee has long-recognized the "well-established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a reasonable period of time is provided, and that the general statutes of limitations are not prohibitory of such contractual provisions." *State v. Evans*, 334 S.W.2d 337, 342 (Tenn. Ct. App. 1959). As this court has previously explained:

> Tennessee courts, however, have consistently upheld contractual periods of limitations that reduce the statutory period for filing suit. *See, e.g.*, *Guthrie v. Connecticut Indemnity Ass'n*, 49 S.W. 829, 830 (Tenn. 1899) (holding that insurance policy's limitation for bringing suit was valid); *Tullahoma Concrete Pipe Co. v. Gillespie Constr. Co. & U.S. Fidelity & Guar. Co.*, 405 S.W.2d 657, 664 (Tenn. Ct. App. 1966) (holding that provision in contract that suit must be brought within one year after sub-contractor ceased work on project was valid); *Das v. State Farm Fire & Cas. Co.*, 713 S.W.2d 318, 324 (Tenn. Ct. App. 1986) (holding that dismissal of plaintiffs' suit was justified by their failure to sue within one year after insurance company's first denial of liability); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn. Ct. App. 1938) (holding that contractual limitation requiring suit on fire policy to be commenced within one year after date of loss was valid and enforceable).

*Fortune v. Unum Life Ins. Co. of America*, 360 S.W.3d 390, 398 (Tenn. Ct. App. 2010).

In this case, the language plaintiff complains of is not an unenforceable exculpatory clause.[2] The language is a contractual limitations period, which our court has repeatedly held

---

[2] While the agreement does contain an unenforceable exculpatory clause limiting defendant's liability, similar to the clauses in *Russell* and *Carey*, this clause was not the basis for the trial court's ruling, as the trial court held that it was unenforceable. The agreement states that if any provision is found to be
(continued...)

to be enforceable so long as the period is reasonable. The provision does not exculpate defendant from most or all liability, but rather limits the time period within which plaintiff can file suit against defendant. Thus, plaintiff's argument in this regard is without merit.

C.

Finally, plaintiff argues that the trial court erred in granting summary judgment based on the unreasonable contractual limitations period. Plaintiff does not argue that one year was an unreasonable time period; rather, he argues that the one-year period should have began on the date that plaintiff purchased the home instead of the date of the inspection. Plaintiff purchased the home on February 10, 2009; thus, his suit would have been timely if the claim accrued on the purchase date, rather than the inspection date.

This court has upheld one year contractual limitations periods in many instances, and that time period is not invalid simply because it commenced on a date prior to plaintiff taking possession of the house. Plaintiff admits that he moved into the house about one week after purchasing it and that he "began to discover problems with the house" after moving in. The trial court found that plaintiff had approximately 11 months after moving into the house to discover problems and file suit within the contractual limitations period. Plaintiff signed the subject agreement and agreed to the contractual limitations period, and it is reasonable. The trial court properly upheld the contractual limitations period and granted summary judgment to defendant because plaintiff's suit was untimely.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, David Desgro.

_____<br>
JOHN W. MCCLARTY, JUDGE

---

[2](...continued)
unenforceable, the remaining provisions will remain in effect.